BERRAFATO, Respondent, vs. EXNER and another, Appellants.
HARVEY, Respondent, vs. SAME, Appellants.

*October 13—November 8, 1927.*

*Trial: Duty of judge to be accessible to jury: Special verdicts in automobile cases: Proximate cause: How submitted: Instructions: Law of the road: Failure of driver to maintain proper lookout.*

1. In an action by the occupant of an automobile to recover damages sustained in a collision on a highway, where the jury found that defendant's excessive speed and his failure to yield half of the roadway constituted a proximate cause of the collision, and affirmatively answered a question as to whether plaintiff's want of ordinary care proximately contributed to his injuries, evidence showing plaintiff's contributory negligence as a matter of law is *held* to render erroneous the attempt of the trial court to reconcile the verdict by changing an affirmative answer of the jury to a negative answer.   p. 154.

2. In submitting the issue of negligence in driving an automobile on a highway, the trial judge may ask the jury to find (1) whether defendant failed to exercise the care ordinarily exercised by men generally under similar circumstances, (2) whether plaintiff's injury was the natural and probable result of a want of ordinary care by defendant, and (3) whether defendant, as an ordinarily intelligent person, ought reasonably to have foreseen that injury would probably follow from such want of care.   [This form of special verdict is commended to the approval of trial judges.]   p. 157.

3. A charge that by proximate cause of an injury was meant the efficient cause, that which acts first and produces the injury as the natural or probable result, is subject to the interpretation that there could be but one proximate cause; and where the jury found that defendant's negligence constituted proximate cause, it might well believe it could not find that want of care of plaintiff constituted proximate cause of the collision, in view of the fact that they were not told there could be more than one proximate cause.   p. 158.

4. Evidence as to the relative position of two approaching automobiles in the highway and as to the failure of the plaintiff who was driving one of the cars to make any effort to avert an impending collision, is *held* to sustain a finding of the jury that plaintiff was not maintaining a proper lookout, and the

trial judge was not warranted in changing the answer of the jury.  pp. 158, 159.

5. A trial is not determined until the verdict of the jury is returned; and until that time it is the duty of the trial judge to remain in the court room.  While the jury is out, the trial judge should be easily accessible.  p. 159.

APPEALS from judgments of the circuit court for Wood county: BYRON B. PARK, Circuit Judge.  *Reversed.*

These actions are brought to recover damages sustained by reason of an automobile collision.  It appears that between 8 and 9 o'clock on Sunday evening, May 9, 1926, the plaintiff *Clarence Harvey* was driving a Chevrolet sedan west on state trunk highway No. 13, west of Wisconsin Rapids, near Seneca Corners.  The defendant *R. H. Exner* was riding east on the same highway in his Buick coupé, accompanied by his sister, *Esther Exner,* and his brother, William Exner.  They were driving from Minneapolis to their home at Ripon.  At the time in question *Esther* was driving.  A collision occurred between the two cars at the point of meeting.  The left front portion of each car was damaged.  The left front wheel of plaintiff *Harvey's* car was broken, so that after the accident the left front spring rested on the pavement thirteen and one-half inches south of the center line of the concrete, the rear end being three and one-half feet north of the center line, so that *Harvey's* car stood diagonally across the highway.  The defendant's car was brought to a stop forty feet from the left front spring of the plaintiff *Harvey's* car.  The left wheels were standing on the concrete and the right wheels on the dirt shoulder to the right of the concrete.  The concrete was sixteen feet in width, and the left wheels of the *Exner* car were six feet to the right of the center line of the concrete. The tracks made by the left wheels of the *Exner* car on the dirt shoulder were traced back a distance of thirty-five feet, where it appeared that the right wheels of the car had

left the concrete. This point was five feet from the left front spring of *Harvey's* car, which was then resting on the concrete.

The principal question litigated was whether the accident occurred on the one or the other side of the center line of the concrete. The jury found that it occurred on *Harvey's* side of the road and that the *Exner* car was on the wrong side of the road at the time of the collision. The jury also found excessive speed on the part of the *Exner* car, and that such excessive speed, as well as the failure to yield one half of the roadway, constituted the proximate cause of the collision. The verdict then contained these questions and answers:

"(5) Was there a want of ordinary care on the part of the plaintiff *Clarence Harvey* in operating his automobile at the time and place of the collision: (a) By failing to yield one half of the roadway? *A.* No. (b) By failing to keep a proper lookout? *A.* Yes.

"(6) If you answer (a) of question 5 'Yes,' then answer this question: Was such negligence a proximate cause of the collision? *A.* ——.

"(7) If you answer (b) of question 5 'Yes,' then answer this question: Was such negligence a proximate cause of the collision? *A.* No.

"(8) Was there any want of ordinary care on the part of the plaintiff *Berrafato* which proximately contributed to his injuries? *A.* Yes."

The court changed the answer to question 8 from "Yes" to "No," and rendered judgments in favor of both plaintiffs. From the judgments so rendered the defendants appeal.

For the appellants there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, attorneys, and *Philip R. Snodgrass* of Monroe, of counsel, and oral argument by *Oscar T. Toebaas.*

*Chas. E. Briere* of Wisconsin Rapids and *A. J. Crowns* of Nekoosa, for the respondents.

Berrafato v. Exner, 194 Wis. 149.

OWEN, J.    The plaintiff *Berrafato* was riding in the Chevrolet sedan, which was then and there owned and driven by *Clarence Harvey,* and sustained personal injuries by reason of the collision.   The cases were tried together, and one verdict was returned covering the issues in both cases.   Both cases were briefed and argued together in this court and will be disposed of in a single opinion.

The manifest inconsistency of the verdict relating to the negligence of the two plaintiffs is relied upon for a reversal of the judgments.   It will be noticed that the jury found the plaintiff *Harvey,* the driver of the car, guilty of a failure to keep a proper lookout, but that such failure was not the proximate cause of the collision, while by the answer to question 8 the jury found that the plaintiff *Berrafato* was guilty of a want of ordinary care which proximately contributed to his injuries.   As *Berrafato* had nothing to do with the driving or the managing of the car, it is apparent that the only negligent conduct on his part was a failure to keep a proper lookout.   They found that this failure contributed to *Berrafato's* injury.   They found that the driver of the car failed to keep a proper lookout, but that such failure did not constitute a proximate cause of the collision.   The inconsistency of these two answers is apparent. The trial judge recognized such inconsistency and came to the conclusion that because the jury found that the failure of the driver to keep a proper lookout did not constitute a proximate cause of the collision, it did not intend to find contributory negligence on the part of *Berrafato.*   He therefore changed the answer relating to *Berrafato's* negligence from "Yes" to "No" and rendered judgment in favor of both plaintiffs.

We feel obliged to say that the evidence in this case does not impress us as it did the trial judge.   He expressed the opinion that the evidence did not point strongly to the negligence of either plaintiff.   The evidence leaves the

strongest impression with us that both plaintiffs were guilty of a failure to keep a proper lookout at least, and we would have been far better satisfied if the jury had found that the collision occurred on the defendants' side of the road.

The evidence showed that the *Exner* car passed another car 300 feet from the place of collision; that they passed the car without difficulty and had ample time to return to their side of the road prior to the collision. The occupants of the *Exner* car all testified that they were on their side of the road, and that just before the collision the plaintiff's car "shot over" to their side of the road. There was testimony to the effect that the defendants' car was going at an excessive rate of speed. Whether or not it was going at an excessive rate of speed, which under our statutes at the time of the collision was more than thirty miles an hour, it is apparent that it was going fast enough so that it had ample time to return to its side of the road after passing the car prior to the collision. The physical facts showed that the right wheels of the *Exner* car left the concrete at least five feet from the point of collision, and that the tracks left on the dirt shoulder were straight and parallel with the concrete, showing that the car was under good control. If the collision had occurred to the left of the center of the highway, it is difficult for us to see how the right wheels of the *Exner* car could have reached the dirt shoulder on the right side of the concrete within five feet from the point of collision and left a straight track on the dirt shoulder for a distance of thirty-five feet parallel with the concrete. Furthermore, it appears without dispute in the testimony that *Miss Exner* asked *Harvey* what he meant by that kind of driving on a Sunday night on a crowded highway, and he told her that he was showing *Berrafato* how to shift gears. He does not deny that *Miss Exner* asked him that question. *Berrafato* admits that she asked him that question and that *Harvey* told her that he was

showing *Berrafato* how to shift gears.   Upon the trial *Harvey* said that he was showing *Berrafato* how to shift gears, but that it was a half a mile from the point of the collision; that at the time of the accident he was maintaining a lookout, saw the *Exner* car coming, and thought it would turn to the right, for which reason he made no attempt to avoid the collision.   It appears without dispute that he could have turned to the right a distance of a foot or a foot and a half without leaving the concrete, and that there was a good dirt shoulder extending three feet from the concrete upon which he could have turned.   It requires more than ordinary nerve for the driver of an automobile to hold his place on the highway in the face of an oncoming car without instinctively making an effort to avoid an impending collision.   We believe that if *Harvey* possessed normal instincts and saw the *Exner* car bearing down upon him, natural impulses would have caused him to turn to the right in an effort to avoid a collision.   Not having done so, we think the jury was manifestly correct in finding that he failed to keep a proper lookout.   We believe that the great weight of the evidence shows that he was showing *Berrafato* how to shift gears at the time of the collision, and that neither of the occupants of the car was maintaining a proper lookout.   We therefore reach the conclusion that the trial judge was not warranted in bringing about a reconciliation of this verdict by changing the answer of the jury to the question which established *Berrafato's* contributory negligence.

We have given some thought to the charge of the court to the jury in an effort to discover the reason for this apparent inconsistency in the verdict.   It will be noted that the verdict calls upon the jury to say whether *Harvey's* failure to keep a proper lookout constituted a proximate cause of the collision.   This the jury answered "No." Why should they answer this question "No," and in the very next answer find *Berrafato* guilty of contributory neg-

ligence? Before taking up the questions of the special verdict, the charge consists of some general remarks, and, among others, a definition of what is meant by burden of proof, preponderance of evidence, proximate cause, ordinary care, and negligence, where such terms may be used during the course of the charge. In defining proximate cause the court said:

"By proximate cause of an injury or damage is meant the efficient cause; that which acts first, and produces the injury or damage as a natural and probable result, under such circumstances that he who is responsible for such cause ought, as a person of ordinary intelligence and prudence, reasonably to foresee that an injury to another may probably follow from his conduct."

In submitting questions 5 and 6, relating to *Harvey's* negligence, the court said:

"Question 5 reads as follows: 'Was there a want of ordinary care on the part of the plaintiff *Clarence Harvey* in operating his car at the time and place of the collision: (A) By failing to yield one half the roadway? (B) By failing to keep a proper lookout?'

"A of this question asks you to determine whether or not the plaintiff *Harvey*, at the time and place of the collision, yielded one half of the roadway to the defendant *R. H. Exner's* car.

"Recall again the statute requiring the driver of an automobile to yield one half the roadway.

"The burden of proof is upon the defendants to convince you by the preponderance of the evidence that this question should be answered Yes. Answer it Yes or No as you find the fact to be.

"B of this question asks you to determine whether or not the plaintiff, at the time and place of the collision, was keeping a proper lookout.

"You should recall the instructions heretofore given you as to the duty to keep a proper lookout.

"The burden of proof is upon the defendants to convince you by the preponderance of the evidence that B of question 5 should be answered Yes. Answer it Yes or No as you find the fact to be.

"Question 6 reads as follows: 'If you answer A of question 5 Yes, then answer this question: Was such negligence a proximate cause of the collision?'

"Question 7 reads as follows: 'If you answer B of question 5 Yes, then answer this question: Was such negligence a proximate cause of the collision?'

"You need not answer question 6 if you shall have answered A of question 5 No. You need not answer question 7 if you shall have answered B of question 5 No.

"You should again recall and have in mind the definition of proximate cause.

"The burden of proof is upon the defendants to convince you by the preponderance of the evidence that these questions should be answered Yes. You should consider these questions separately, and answer Yes or No to each question as you find the facts to be."

That is all the court said in submitting the questions relating to *Harvey's* negligence. He said nothing further about proximate cause, nowhere did he tell the jury that there could be more than one proximate cause. The definition of proximate cause which the court gave to the jury is a stock definition almost universally given by trial judges and has met the approval of this court. It is a correct technical definition of the term "proximate cause," which in course of time comes to be understood by most lawyers. But it is believed that a jury does not find a mere reading of this technical, concise, and condensed definition particularly illuminating, and that they retire to their jury room with a somewhat hazy concept as to what constitutes proximate cause. We are not criticising trial judges for using this definition. But the verdict in this case stimulates reflection upon the question of whether jurors could not properly be afforded greater illumination upon the nature and character of proximate cause.

Trial courts may well indulge in greater elaboration, even resorting to illustration, in order to convey to the jury a more intelligent conception of the term "proximate cause."

Berrafato v. Exner, 194 Wis. 149.

We realize that trial courts have heretofore been reminded that the term "proximate cause" is well defined in the law, and that there is no excuse for falling into error in defining the term. Such expressions on the part of this court no doubt encouraged trial judges to follow closely the technical definition of the term that has met with the approval of this court. However, all will agree that to give that technical definition and to say no more affords the jury little light upon the subject. The whole troublesome matter may be avoided by so framing the special verdict as to require the jury to find, as matters of fact, the essential elements necessary to constitute legal negligence. Thus, the first question may ask the jury to find whether the defendant failed to exercise such care as the great mass of mankind ordinarily exercises when acting under the same or similar circumstances with reference to the particular conduct complained of. Question 2 can inquire as to whether the plaintiff's injury was the natural and probable result of such want of ordinary care on the part of the defendant; and question 3 may inquire whether the defendant ought, as a person of ordinary intelligence and prudence, reasonably to have foreseen that injury to a traveler upon the highway in question may probably follow from such want of care on his part. Under such a verdict it is unnecessary to define the vexed term "proximate cause." Where numerous grounds of negligence are alleged and litigated the verdict will be quite long, but it will be a verdict easily understood and followed by the jury, and, it is believed, their labors will be facilitated. The same method may be adopted in the matter of submitting the question of contributory negligence. Throughout such a verdict the jury are dealing solely with questions of fact, and they are not called upon to dispute among themselves upon questions of law, of which none of them have more than a hazy conception. We commend this form of verdict to the approval of trial judges.

Coming more particularly to the problem before us, we know that the jury were told that "by proximate cause of an injury or damage is meant *the* efficient cause; *that* which acts first, and produces the injury or damage as a natural and probable result," etc.  This language is subject to the interpretation that there can be but one proximate cause of an injury.  The jury having found that the defendant's negligence constituted the proximate cause of the injury, they might well have believed that they could not find that the want of ordinary care on the part of *Harvey* also constituted a proximate cause of the collision, in view of the fact that they were nowhere told that there could be more than one proximate cause.  This reasoning on the part of the jury seems rather probable in view of the fact that by answer to question 8 they had no difficulty in finding that *Berrafato's* want of ordinary care proximately contributed to his injuries.  Now if *Berrafato* was guilty of a want of ordinary care, which the jury found and as we think he was, which proximately contributed to his injuries, which the jury found and as we believe, they could not find that *Harvey* was not guilty of a want of ordinary care which proximately contributed to the collision.  But they were not permitted to find that *Harvey's* want of ordinary care proximately contributed to the collision.  As to *Harvey,* they were required to find that his want of ordinary care was a proximate cause of the collision.

That the jury were experiencing trouble in their deliberations is evidenced by the fact that before returning their verdict they expressed a desire for further instructions, with which they could not be accommodated, because the trial judge had left Wisconsin Rapids, where the case was tried, and was then in his home at Stevens Point.  Because the judge was not present we do not know what their trouble was.  Although the judge could and would have returned to Wisconsin Rapids within an hour, the jury did not wait, and returned their verdict before he could have reached the

court room. No doubt the trial judge regrets this incident, and needs no further reminder than a reference to *Smith v. Sherwood*, 95 Wis. 558, 70 N. W. 682, and *Caryl v. Buchmann*, 177 Wis. 241, 187 N. W. 993, that the duty of a trial judge is to remain in the court room during the progress of a trial. This incident also indicates that the trial cannot be said to be determined until the verdict of the jury is returned, and that while the jury is out the trial judge should be easily accessible.

In our view of the case, the verdict should be reconciled by changing the answer to question 7 from "No" to "Yes." Judgment should be rendered in favor of the defendants in both causes of action.

*By the Court.*—The judgment in each case is reversed. Each cause is remanded with instructions to render judgment in favor of the defendant.